UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINALD WESTFALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:08-CV-250 (CEJ) |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on the petition of Reginald Westfall for a writ of habeas corpus, pursuant to 28 U.S.C. § 2554.

**I. Procedural History**

Petitioner, Reginald Westfall, is currently incarcerated in the Southeast Correctional Center, pursuant to the judgment of the St. Louis City Circuit Court. On January 23, 2003, a jury found petitioner guilty of first-degree assault and armed criminal action in connection with an attack on the boyfriend of his estranged wife. On March 10, 2003, petitioner was sentenced to two concurrent twenty-five year terms of imprisonment.

The Missouri Court of Appeals affirmed petitioner's conviction and sentence in an order issued on August 31, 2004. State v. Westfall, No. ED82818 (Mo. Ct. App. August 31, 2004) (Resp. Ex. E). On February 23, 2005, petitioner filed a *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15. The post-conviction court denied petitioner's motion without a evidentiary hearing. On January

1

30, 2007, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Westfall v. State, No. ED87592 (Mo. Ct. App. January 30,2007) (Resp. Ex. J).

Petitioner filed his § 2254 petition with this Court on February 21, 2008, asserting the following grounds for relief: (1) appellate counsel failed to raise a claim of vindictive prosecution; (2) the prosecutor engaged in prosecutorial misconduct by recommending concurrent twenty-five year sentences; (3) trial counsel failed to investigate an *ex parte* order of protection filed by petitioner against victim, Robert Jenkins; (4) the prosecutor violated Brady by failing to disclose evidence of aforementioned *ex parte* order; (5) trial court erred in overruling petitioner's Batson challenge to the state's exclusion of venireperson Garland Johnson; (6) trial court improperly submitted Instruction No. 5; (7) trial counsel failed to object to such submission; (8) trial court erred in failing to define "attempt" in Instruction No. 5; (9) trial counsel failed to object to such error; (10) trial counsel failed to pursue exculpatory evidence of prior plea negotiations between the state and the victim; (11) prosecutor violated Brady by withholding evidence of aforementioned plea negotiations; (12) prosecutor charged petitioner with assault under the wrong statute; (13) appellate counsel failed to raise and preserve the claim that petitioner was charged under the wrong statute; (14) trial court erred by failing to inform petitioner that first-degree assault was a "dangerous felony" and that he would have to serve eighty-five percent of his sentence; and (15) trial court erred in admitting evidence of petitioner's prior domestic abuse of his ex-wife.

II. Background

The victim, Robert Jenkins, was dating and living with petitioner's estranged wife, Tracie Westfall. (Tr. 169). On February 9, 1999, Jenkins drove Westfall and her

two daughters to school. Westfall and one of the children went inside the school, while Jenkins stayed in the car with the other child. (Tr. 170-172). Jenkins testified that while he was in the car, petitioner opened the passenger door and said, "I'm going to teach you a lesson about messing with my wife." (Tr. 173). Petitioner then pulled out a box cutter and began cutting Jenkins face and neck. (Tr. 174). Jenkins, who still had his foot on the brake pedal, released the brake causing the car to crash through a nearby fence. Jenkins exited the car and looked for help, while petitioner drove away with the child in the car. (Tr. 173-175). As a result of the incident, Jenkins suffered severe lacerations and has permanent scars on his face and neck. (Tr. 151, 177-178)

During trial, petitioner claimed that he was acting in self-defense. Petitioner testified that he opened the car door and asked Jenkins to get out. (Tr. 292). According to the petitioner, Jenkins then began hitting him across the face. (Tr. 293). Petitioner then pulled out a knife to defend himself. (Tr. 309-310). As a result of the fight, petitioner testified that his right eye was injured. (Tr. 294). The jury ultimately rejected petitioner's defense and convicted him of first-degree assault and armed criminal action

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

IV. <u>Discussion</u>

<u>Procedural Default</u>

Before a district court may consider a habeas corpus petition, a state prisoner must fairly present his or her claims to the state courts during direct appeal or in

4

post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir.1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir.1996)). Therefore, a state prisoner who fails "to follow applicable state procedural rules [for] raising claims'…, is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.1996). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

A state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004); See Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir.1994)).

Here, petitioner did not raise grounds two and four on direct appeal. Petitioner also failed to raise grounds one, ten, eleven, twelve, thirteen, and fourteen in the post-conviction appeal. Furthermore, petitioner has not demonstrated cause or prejudice

5

for the procedural default. Therefore, these grounds are procedurally defaulted and the Court will not review their merits under § 2554.

## Ground Three: Ineffective Assistance of Counsel

In his third ground for relief, petitioner contends that trial counsel failed to investigate an *ex parte* order of protection filed by him against Robert Jenkins. On July 1, 1998, petitioner filed an *ex parte* order of protection, stating that Jenkins hit him on the head with a jack handle. Petitioner claims that his *ex parte* order is Brady material and should have been discovered by trial counsel because it would have supported his claim that the victim had an aggressive disposition and that he had attacked the victim in self-defense.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In order to obtain relief under § 2254(d)(1), however, it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, petitioner must show that the Missouri courts applied Strickland to the facts of his case in an objectively unreasonable manner. Id.

On appeal, the Missouri Court of Appeals rejected petitioner's ineffective assistance of counsel claim, deferring to the holding of the post-conviction motion court. The motion court held that evidence regarding petitioner's *ex parte* order:

> "would have not been relevant or probative of movant's claim that he was acting in self-defense at the time of the crimes, which occurred in February 1999 because the order was an ex parte order, it was not a final judgment and it was not entered following an adversarial hearing. Movant has not alleged why he was not aware of or why he did not advise his attorney of this information, or why he believes he was dependent upon the prosecutor to disclose a civil proceeding in which he was himself a petitioner. The Court also notes that movant testified at trial under oath regarding the prior incident of abuse."

(Resp. Ex. J, 6-7). Petitioner has failed to show that the Missouri courts applied Strickland in a unreasonable manner. Even if trial counsel acted unreasonably, the Court cannot say that petitioner was prejudiced by counsel's failure. At trial, petitioner testified that he was afraid of Jenkins because in 1998, Jenkins hit petitioner in the head with a hydraulic jack handle. (Tr. 297). In light of this testimony, there is no reasonable probability that, but for counsel's failure, the result of petitioner's proceeding would have been any different. Therefore, petitioner's third ground for relief is denied.

### Ground Five: Venireperson Garland Johnson

In his fifth groun, petitioner contends that the trial court erred in overruling his Batson challenge to the state's exclusion of Garland Johnson, an African-American venireperson.

Under Batson, peremptory strikes cannot be used to remove a potential juror solely on the basis of race. Batson v. Kentucky, 476 U.S. 79, 84-87 (1986). A defendant who raises a Batson claim must make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race. United States v.

7

Brooks, 2 F.3d 838, 840 (8th Cir.1993)(citing Hernandez v. New York, 500 U.S. 352 (1991). If the defendant establishes a prima facie case, the burden then shifts to the prosecutor to give a race-neutral explanation for striking the juror. Id. "[A] prosecutor's explanation for strike is considered race-neutral if the explanation is facially based on something other than the juror's race." Id. The burden then shifts to the defendant to show that the prosecutor's explanation was pretexual. Id. The district court must then decide whether the defendant carried the burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Rice v. Collins, 546 U.S. 333, 338 (2006)(quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)).

Here, the prosecutor explained that venireperson Johnson was struck from the jury because she had a brother-in-law who was incarcerated for armed robbery and drugs, crimes that had occurred in the City of St. Louis. The prosecutor also stated that Johnson was struck because of her demeanor: during *voir dire*, Johnson failed to make eye contact with the prosecutor when answering questions. In rebuttal, defense counsel argued that the prosecutor's explanations were pretexual, especially in light of the fact that she failed to strike a similarly situated white venireperson, Mr. Puckett. Mr. Puckett's brother was incarcerated in Oklahoma and his ex-wife was on probation for forgery. In response, prosecutor argued that Mr. Puckett was not similarly situated because his brother was incarcerated for a crime he committed ten years earlier in Oklahoma, while Johnson's brother was incarcerated for a crime committed in the City of St. Louis. Furthermore, Puckett was active during *voir dire* and made eye contact,

while Johnson did not. The prosecutor also noted that Puckett had served on a jury in the past, that he was educated, and that he worked as an engineer for the city. After hearing these explanations, the trial court denied petitioner's Batson challenge.

On appeal, petitioner argued that the prosecutor's explanation regarding Johnson's "lack of education" was pretextual because the venirepersons were never asked about their education or occupation. The Missouri Court of Appeals rejected petitioner's argument, noting that "the prosecutor did not base her reasons for the strike solely upon a factor that had not been asked to the panel. Rather, the prosecutor gave several reasons for the strike." (Res. Ex. E. 7). Therefore, the Missouri Court of Appeals held that the trial court did not err in overruling petitioner's Batson challenge.

The Court may grant petitioner relief on his Batson claim only if it finds that it was unreasonable of the trial court to credit the prosecutor's race-neutral explanation. Rice, 546 U.S. at 338. Here, the prosecutor articulated three reasons for striking Johnson; all of which have been deemed race-neutral by federal courts. See U.S. v. Hughes, 911 F.2d 113, 114 (8th Cir. 1990)(holding that the prosecutor did not violate Batson by striking a jury who had a family member convicted of a felony), see also, Brooks 2 F.3d. at 841; Hernandez, 500 U.S. at 360 (holding that striking jurors for their demeanor during *voir dire* does not violate Batson); U.S v. Hunter, 86 F.3d 679,683 (8th. Cir. 1996)(upholding the strike of a juror based on his limited education). Because the state courts' holdings are consistent with federal law, the Court cannot say that it was unreasonable for the Missouri courts to overrule petitioner's Batson challenge. Therefore, petitioner's fifth ground for relief is denied.

### Grounds Six and Eight: Jury Instruction No. 5

9

In his sixth and eighth claims for relief, petitioner contends that the trial court erred in submitting and failing to define elements in Instructions No. 5. The challenged instruction stated:

> If you find and believe from evidence beyond a reasonable doubt:
>
> > First, that on or about February 2, 1999, in the City of St. Louis, State of Missouri, the defendant attempted to cause serious physical injury to Robert Jenkins by cutting him, and
> >
> > Second, that defendant in the course of such conduct caused serious physical injury to Robert Jenkins, and
> >
> > Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 9
> >
> > then you will find the defendant guilt under Count I of assault in the first degree.
> >
> > However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Petitioner first argues that the instruction was submitted in error because the trial court failed to define "attempt." Second, petitioner argues that the trial court erred by misleading and confusing the jury on the meaning of "attempted to cause." During deliberations, the jury inquired about the difference between "attempted to cause serious physical injury" and "consciously disregard" as well as the difference between "recklessness" and "attempt." The trial court responded to these inquiries by telling the jurors that they must be guided by the instructions as written and use their own common sense understanding of the words in the instructions. According to the petitioner, this response misled and confused the jury. Petitioner argues that the court should have informed the jury that attempted first degree assault requires a "substantial step" toward killing, or causing serious physical injury to, the victim.

To obtain habeas corpus relief, a petitioner must demonstrate that he was deprived of a right under the Constitution, laws, or treaties of the United States. See McMillian v. Pennsylvania, 477 U.S. 79, 85 (1986). Errors of state law are not entitled to habeas relief and "cannot be repackaged as federal errors simply by citing the Due Process Clause." Carson v. Director of Iowa Dept. of Correctional Services, 150 F.3d 973, 975 (8th Cir. 1998).

Generally, "the formulation of jury instructions concern the application and interpretation of state law." Louisell v. Director if Iowa Dept. of Corrections, 178 F.3d 1019, 1022 (8th Cir. 1999)(citing Estelle v. McGuire, 502 U.S. 62, 67 (1991)). Further, constitutional violations do not arise from a state court's failure to define elements of a state offense in a jury instruction. Carson, 150 F.3d at 976. In Carson, a petitioner charged with causing homicide and seriously bodily injury, claimed that the trial court erred in failing to define the elements of reckless driving in the jury instructions. Id. The Eighth Circuit held that the petitioner's claim was not reviewable by federal courts because "there is no constitutional reason why a state offense must include particular elements." Id.

This case is analogous to Carson. Here, petitioner is similarly arguing that the trial court erred by failing to define an element of an offense. Because such error does not present a constitutional issue, Grounds Six and Eight do not establish a basis for federal habeas corpus relief.

However, even if the trial court's failure rose to the level of a constitutional violation, the Missouri Court of Appeals held that the trial court's actions did not constitute plain error. According to the appellate court, the everyday understanding of "attempt" does not differ from the omitted definition of "attempt." "Both encompass

11

the notion that a person acted with intent and purpose." (Resp. Ex. E. 14 ). The Missouri Court of Appeals' determination was not unreasonable. The Court cannot say that using the legal definition of attempt, instead of the jurors' common-sense understanding of the term, would have led to a different outcome for the petitioner.

### Grounds Seven and Nine: Ineffective Assistance of Counsel

In his seventh and ninth claims for relief, petitioner contends that trial counsel was ineffective for failing to object to the trial court's errors in grounds six and eight. Having determined that the trial court's errors in grounds six and eight did not affect the outcome of petitioner's trial, the Court finds that counsel's failure to object to such errors was neither unreasonable nor did it prejudice the petitioner.

### Ground Fifteen: Evidence of Prior Domestic Abuse

Petitioner argues that the trial court erred in admitting evidence of his prior abuse of his ex-wife. At trial, the defense called Traci Westfall to testify. On direct examination, counsel inquired about a letter Westfall had written in regard to the 1998 incident between Jenkins and the petitioner. On cross examination, Westfall testified that she wrote the letter because the petitioner had threatened her. (Tr.359). Westfall also testified that on the day of the incident, she kept her children out of school because she was afraid of the petitioner. (Tr. 352). During the months leading up to the incident, Westfall stated that the petitioner threatened her and was physically violent towards her because of her relationship with Jenkins. (Tr. 353, 363). Petitioner claims that this evidence was improperly used to show his bad character and his propensity to engage in criminal behavior.

Because questions concerning the admission of evidence are matters of state law, a petitioner is entitled to habeas relief only if his constitutional rights have been

violated. Rainer v. Dept of Corrections, 914 F.2d 1067, 1072 (8th. Cir. 1990). Generally, "there is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts." Harris v. Bowersox, 184 F.3d 744,752 (8th Cir. 1999). In order to establish a constitutional violation, "a habeas petitioner must show that the alleged error rendered the entire trial fundamentally unfair-that there is a reasonable probability that the error complained of affected the outcome of the trial." Id.

Under Missouri law, evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing propensity of the defendant to commit such crimes. State v. Morrow, 968 S.W.2d 100, 107 (Mo. 1998). Prior misconduct of the defendant, however, is admissible to show motive, intent, the absence of mistake or accident, a common scheme or plan, or the defendant's signature modus operandi. Id. Missouri also recognizes that evidence of uncharged crimes are admissible to present a complete and coherent picture of the events that transpired. Id.

The Missouri Court of Appeal rejected petitioner's argument, and held that by calling Westfall as a witness, the petitioner opened the door to her testimony regarding the 1998 letter. Furthermore, the Missouri Court of Appeals concluded that the evidence of petitioner's prior domestic abuse "added to the complete and coherent picture of the assault on Mr. Jenkins." (Resp. Ex. E. 10-11).

The Missouri Courts of Appeals' finding is consistent with federal law. See United States v. White, 645 F.2d. 599, 602 (8th Cir.1981)("evidence of crimes or acts other than those charged in the indictment is admissible either if it completes the story of the crime on trial or if it qualifies under Fed. R. Evid. 404(b).")(quoting United States v. Ulland, 643, F.2d 537 at 540 (8th Cir. 1981); Fed. R. Evid. 404(b)(evidence about

other crimes, wrongs, or acts if it has a bearing on any relevant issue other than the defendant's propensity toward criminal activity). Petitioner has failed to show that Missouri courts applied federal law unreasonably or that the outcome of his trial would have been different but for the trial court's error. Thus, petitioner's fifteenth claim for relief is denied.

## V. Conclusion

In summary, petitioner has failed to establish that the state courts' decisions on his claims were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 15th day of February, 2011.